

**FILED**

**AUG 0 5 2011**

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 11-30010-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | ADOPTING REPORT AND |
| | * | RECOMMENDATION AND |
| CLEMENT PAUL VALANDRA, | * | DENYING MOTION TO |
| | * | SUPPRESS |
| Defendant. | * | |

## I. INTRODUCTION

Defendant Clement Paul Valandra filed a Motion to Suppress Statements and

Evidence (Doc. 23), along with a Memorandum. (Doc. 24). On May 18, 2011, Magistrate

Judge Mark A. Moreno held an evidentiary hearing on the motion. (Doc. 32). On June 9,

2011, Judge Moreno issued a Report and Recommendation (Doc. 37) denying the motion.

Valandra filed Objections to the Report and Recommendation (Doc. 40) on June 23, 2011.

Copies of the Report and Recommendation were served upon the parties as required

by 28 U.S.C. § 636. In considering a magistrate judge's recommendation on a dispositive

matter, such as a motion to suppress evidence, a district court must make a "de novo

determination of those portions of the report or . . . recommendations to which objection is

made." 28 U.S.C. § 636(b)(1). This Court has conducted a de novo review of the record.

For the reasons explained below, this Court adopts the Report and Recommendation.

## II. FACTUAL BACKGROUND

At approximately 3:30 a.m. on August 23, 2010, Rosebud Sioux Tribe Police Officer

Clyde Brady saw a green 1971 Ford Galaxie stop and make a left-hand turn at the junction of

U.S. Highways 18 and 83 in Mission, South Dakota. (T.[1] 5-7; Ex. 11, Affidavit for Search Warrant, at 3). Officer Brady noticed that no brake lights illuminated during this maneuver, so he stopped and approached the car. (T. 9; Ex. 11, at 3). Valandra was the driver, and Ramona Whiting was the lone passenger in the car. (T. 9, 11). Officer Brady could smell alcohol coming from inside the car. (T. 10-11; Ex. 11, at 3).

While speaking with Valandra, Officer Brady could smell the same odor coming from Valandra's breath. (T. 10-11; Ex. 11, at 3). Officer Brady also noticed that Valandra slurred his speech and had bloodshot, glassy eyes. (T. 10-11; Ex. 11, at 3). Officer Brady asked Valandra to perform various exercises and field sobriety tests that, in Officer Brady's opinion, Valandra did not perform satisfactorily. (T. 11-15; Ex. 11, at 3-4).

Officer Brady placed Valandra under arrest for driving under the influence of an alcoholic beverage. (T. 16; Ex. 11, at 4). Officer Brady handcuffed, searched, and put Valandra in the back of the patrol car and called for a tow truck for Valandra's car. (T. 16; Ex. 11, at 4).

In the meantime, Sylvan White Hat, another Rosebud tribal officer, arrived at the scene to provide assistance. (Ex. 11, at 4). Officer White Hat arrested Whiting on an outstanding tribal warrant and placed her in the patrol car. (T. 17).

After Valandra's arrest, Officer Brady approached the vehicle a second time and noticed what looked like a cup of beer, about three-quarters full, in the console on the inside floor board. (T. 21-22; Ex. 11, at 5). This observation prompted Officer Brady and Officer

---

[1]Any references to the suppression hearing transcript will be "T" followed by the page number or numbers.

White Hat to search the interior of the vehicle. Underneath the driver's seat, Officer Brady found a plastic sandwich bag with a corner ripped off, which he suspected was drug paraphernalia. (T. 23-24; Ex. 11, at 5). He and Officer White Hat then suspended their search of the vehicle. (T. 35).

Minutes later, Officer Brady, a K-9 officer, deployed his trained police service dog - "Cruz" - around the vehicle. (T. 24-26). Cruz exhibited a change of behavior and alerted to odors that he detected at both the passenger and driver's side doors. (T. 35-36). Officer Brady put Cruz back in the patrol car and, along with Officer White Hat, resumed searching the vehicle.

While searching, Officer White Hat discovered two marijuana buds on one of the doors to the vehicle and a third bud in the glove box. (Ex. 11, at 5). He also found a maroon Skoal can, containing a white powdery substance, and a two-inch clear drinking straw. (T. 37; Ex. 11, at 5). Officer Brady took digital pictures of where these items were found and released the vehicle for towing to a local wrecker. (Ex. 11, at 5). He and Officer White Hat thereafter transported Valandra and Whiting to the Rosebud jail. (Ex. 11, at 5).

At the jail, Valandra initially refused to provide breath and urine samples. (T. 38-39; Ex. 11, at 5). Afterward, he consented to a portable breath test that yielded a result of .060% alcohol. (Ex. 11, at 6).

At approximately 8:00 a.m., Officer Brady field-tested the substances that were found in the vehicle. (Ex. 11, at 6). The green leafy substances tested positive for marijuana. (Ex. 11, at 6). The white powdery substance tested positive for cocaine. (Ex. 11, at 6). Following the results of these tests, Officer Brady sought a search warrant from Rosebud Sioux Tribal

-3-

Judge Steve Emery for Valandra's urine. (Government's Ex. 5, Search Warrant). Another officer collected the urine at 10:15 a.m.

On September 10, 2010, shortly before 7:30 p.m., Officer Brady stopped a black Chevrolet Baretta north of Rosebud, South Dakota, for not having a front license plate. (T. 41; Ex. 11, at 1). He asked the driver, Cheyenne Guerue, if there was any marijuana in the car, and she responded that marijuana could be found in the center console. (Ex. 11, at 1-2). Officer Brady requested that Guerue and her daughter, a minor, exit the car. (Ex. 11, at 2). He then proceeded to search the car. (Ex. 11, at 2). Inside, he found a plastic bag containing a green leafy substance and a pill bottle in the center console. (T. 42; Ex. 11, at 2). In the pill bottle, he found what appeared to be three marijuana joints, a package of "zig zag" papers, and cash. (Government's Ex. 9, Track 4, at 03:10-20; Ex. 11, at 2).

After Guerue's husband came and picked up the child, Brady transported Guerue to the Rosebud jail. (Ex. 11, at 2). While at the jail, Officer Brady and Drug Task Force Officer Ben Estes advised Guerue of her rights and - after she waived her rights - interviewed her. (T. 42-43; Ex. 11, at 2-3). During the interview, she admitted to marijuana use and said that she purchased marijuana earlier that day from Valandra at his residence. (T. 43; Ex. 11, at 3). When asked about the residence, Guerue said it was a trailer house behind the Boys and Girls Club in Mission, with a horse trailer and blue truck nearby. (T. 43-44; Ex. 11, at 3).

Also on September 10, 2010, Officer Brady received the lab results for the samples he obtained from Valandra's August 23, 2010, traffic stop and arrest. (Ex. 11, at 6). Valandra's urine had benzoylecgonine - the primary metabolite of cocaine - in it. (Ex. 11, at 6). The green leafy substances were determined to be marijuana, and the white powdery substance

-4-

was determined to be cocaine. (Ex. 11, at 6).

At approximately 10:00 p.m. on September 10, 2010, Officer Brady sought and obtained a telephonic search warrant from Judge Emery, to search Valandra's trailer for illegal controlled substances, contraband, and other items detailed in an addendum. (Ex. 10, Search Warrant; Ex. 11, at 7). The warrant itself was neither read nor signed by the Judge.

On September 14, 2010, Officer Brady completed the return for the search warrant and provided the Judge with an inventory of the property that was seized from Valandra's home. (Ex. 10, at 2-3). The return indicated that the warrant was executed at 11:21 p.m. on September 10. (Ex. 10, at 2).

On February 8, 2011, Valandra was charged by indictment with possession of cocaine and distribution and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 844(a). (Doc. 3).

**III. DISCUSSION**

**A. Objection 1 - Whether the Good-Faith Exception to the Warrant Requirement Applies**

Valandra objected to the Report and Recommendation on the grounds that issuance of the search warrant for Valandra's house violated his Fourth Amendment rights. Judge Moreno recommended that the good-faith exception to the Fourth Amendment warrant requirement, as articulated by United States v. Leon, 468 U.S. 897 (1984), and its progeny, applies in this case to validate the search of Valandra's house. Valandra objected to this recommendation on the grounds that: (1) Judge Emery abandoned his judicial role in issuing the warrant; and (2) the September 10, 2010 search warrant was so facially deficient that it

-5-

could not reasonably have been relied upon by an officer in Officer Brady's position.

The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached judge; (2) contain a "particular[] description of the place to be searched, and the persons or things to be seized"; and (3) be based "upon probable cause, supported by Oath or affirmation." Dalia v. United States, 441 U.S. 238, 255 (1979); see also U.S. Const amend. IV. When violations occur, the Exclusionary Rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." Leon, 468 U.S. at 906 (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)).

In Leon, the Supreme Court articulated a good-faith exception to the Exclusionary Rule. Id. at 922. Under the exception, the Exclusionary Rule is not to "be applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid." United States v. Taylor, 119 F.3d 625, 629 (8th Cir. 1997) (citing Leon, 468 U.S. at 905, 922); see also United States v. Gipp, 147 F.3d 680, 688 (8th Cir. 1998) (applying the Leon good-faith exception to a tribal search warrant). The Supreme Court explained the rationale behind the good-faith exception in this manner:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In this ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

-6-

Leon, 468 U.S. at 921 (internal citation omitted).

"The Exclusionary Rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916. The good-faith exception does not exclude evidence when an officer's reliance on a warrant issued by a judge or magistrate is objectively reasonable. Id. at 922. An officer's reliance is not objectively reasonable, and the good-faith exception, therefore, does not apply, in the following four circumstances: (1) When the issuing judge is misled by information that is false or made in reckless disregard for the truth; (2) When the issuing judge completely abandons her judicial role; (3) When the information provided to the judge includes so little indicia of probable cause that the officer's belief in its existence is entirely unreasonable; and (4) When the warrant is so facially deficient, i.e., in failing to particularize the place to be searched or the things to be seized, that the executing officer cannot reasonably presume it to be valid. Id. at 923; see also United States v. Hessman, 369 F.3d 1016, 1020 (8th Cir. 2004) (noting these four situations).

Officer Brady's reliance on Judge Emery's issuance of an oral warrant by telephone was objectively reasonable under the circumstances, and none of the four disqualifying circumstances occurred in this case. None of Officer Brady's sworn or unsworn statements contained either known or reckless falsities. Indeed, Valandra does not claim otherwise or assert that any of the information that Officer Brady supplied to Judge Emery was inaccurate. Further analysis of the other circumstances, however, is necessary.

-7-

### 1. Judicial Abandonment

Valandra contends that Judge Emery failed to act in a neutral and detached manner by merely rubber-stamping the telephonic search warrant. This contention, however, is not supported by the evidence. To the contrary, the audio-recorded telephone conversation between Judge Emery and Officer Brady, during which Judge Emery telephonically approved the search warrant at issue, demonstrates that Judge Emery manifested the neutrality and detachment demanded of a judicial officer presented with a warrant application. (See Government's Ex. 1). Judge Emery stated that he normally records telephonic search warrant applications because "that way if it ever comes up in federal court or something we at least have a recording." (Id. at Track 3, 00:49-56). He then placed Officer Brady under oath. (Id. at Track 4, 00:05-12). After doing so, Judge Emery performed the substantive tasks of determining probable cause and authorizing the warrant. (Id. at Track 5, 00:30-32, 01:43-46). He also gave Officer Brady specific instructions on how to complete and sign and date the warrant. (Id. at Track 5, 01:47-2:04; 02:22-39). Importantly, when Officer Brady asked Judge Emery during the conversation about entertaining another search warrant for Valandra's urine, Judge Emery refused - stating "well, not until you find something" - because no probable cause existed for such a search warrant. (Id. at Track 5, 02:50-03:25). Having considered the recording of the warrant application process and other related evidence, this Court is unable to find that Judge Emery abandoned his judicial role in any

-8-

way, such as by failing to act in a neutral and detached manner, acting as a mere rubber

stamp, engaging in the "competitive enterprise of ferreting out crime," see Johnson v. United

States, 333 U.S. 10, 14 (1948), or blindly approving the telephonic warrant.

### 2. Indicia of Probable Cause and Facial Sufficiency of the Warrant

Valandra argues that Judge Emery's probable cause determination was based on

insufficient information to authorize a search warrant for Valandra's home. Valandra

contends that the warrant never should have been issued, and that a reasonable officer in

Officer Brady's position at the time would have known this.

When examining the objective reasonableness of an officer's execution of a warrant,

the Court assesses the "totality of the circumstances, including any information known to the

officer [] but not presented to the issuing judge." United States v. Perry, 531 F.3d 662, 665

(8th Cir. 2008) (quoting United States v. Proell, 485 F.3d 427, 431 (8th Cir. 2007)).

At the beginning of his conversation with Judge Emery, Officer Brady confirmed that

he was seeking a warrant to search for drugs. (Ex. 9, Track 3, 01:18-22). After being sworn,

Officer Brady read aloud to Judge Emery the first two-and-a-half pages of the warrant

affidavit. (Id. at Track 4, 00:17 - Track 5, 00:22). When Officer Brady began reading the

section of the affidavit involving Valandra's August 23, 2010 arrest, Judge Emery

immediately interrupted Officer Brady and said "I remember that one. I did the warrant on

that one as well [referring to the August 23, 2010 warrant for a sample of Valandra's urine]."

(Id. at Track 5, 00:22-26). Officer Brady explained that he "put that in to show history (Id. at

00:26-29), to which Judge Emery replied "you definitely have probable cause." (Id. at 00:29-

32). Officer Brady then informed the judge that the rest of the affidavit was the same as the

August 23 affidavit, except for the last two paragraphs, which Officer Brady then read aloud

to the judge. (Id. at 00:37-01:11). The concluding, or "Wherefore," paragraph of the

affidavit incorporated by reference "Addendum A," which in turn described in detail the

items to be seized. (Ex. 11; see also Ex. 9, Track 5, 01:26-28). Officer Brady asked if he

should read the addendum out loud, but the judge responded, "I don't think we need to.

You've got probable cause anyway." (Ex. 9, Track 5, 01:41-46).

        The Leon inquiry "is confined to the objectively ascertainable question whether a

reasonably well-trained officer would have known that the search was illegal" in light of "all

of the circumstances." Leon, 468 U.S. at 922 n.23. This Court concludes that the information

that Officer Brady communicated, in conjunction with the information that the tribal judge

expressed awareness of, provided Officer Brady with an objectively reasonable basis for

believing that the warrant and incorporated documents contained sufficient indicia of

probable cause to justify searching Valandra's home for evidence of illegal drug activity.

Officer Brady had no reason to question Judge Emery's probable cause determination or the

sufficiency of the information that factored into that determination. See id. at 921 ("In the

ordinary case, an officer cannot be expected to question the magistrate's probable-cause

-10-

determination or his judgment that the form of the warrant is technically sufficient. Once the

warrant issues, there is literally nothing more the policeman can do in seeking to comply with

the law.") (internal quotation and citation omitted); see also United States v. Gibson, 928

F.2d 250, 253-54 (8th Cir. 1991) ("[o]rdinarily, a police officer cannot be expected to

question a judge's probable cause determination.").

The judge is the final reviewing official who "must shoulder the ultimate

responsibility for procedural errors in a warrant application process." United States v. Berry,

113 F.3d, 121 124 (8th Cir. 1997). Officers such as Officer Brady "are not ordinarily

expected to question a [judge's] judgment as to a warrant's technical sufficiency." United

States v. Hyten, 5 F.3d 1154, 1156 n.5 (8th Cir. 1993). "Suppression is an appropriate

remedy if the judge, in issuing the warrant, was misled by information in the affidavit that the

affiant knew or would have known it was false except for the affiant's reckless disregard for

the truth. Gibson, 928 F.2d at 254. "Evidence should be suppressed only if the affiant-

officer could not have harbored an objectively reasonable belief in the existence of probable

cause." Id. at 254 (citing Leon, 468 U.S. at 921-23).

Although it is troubling that none of the addendum was ever read to the tribal judge,

Officer Brady attempted to read it and was told that doing so was unnecessary. The

addendum appears to be a standard form that Officer Brady reasonably could have concluded

had been seen before by Judge Emery and that Judge Emery did not believe needed to be read

-11-

to him. In addition, Judge Emery knew that Officer Brady was requesting to search for drug

evidence in a residence, which is a scenario that Judge Emery no doubt has encountered on

previous occasions. Judge Emery was not misled by any information in the affidavit, and the

affidavit contained no false or misleading information.

The Ninth Circuit has applied the Leon good-faith exception in circumstances similar

to this case. In United States v. Negrete-Gonzales, 966 F.2d 1277 (9th Cir. 1992), federal

agents read the issuing judge the warrant affidavit, but not the warrant itself. Id. at 1283.

Although the appellate court first determined that this procedure ran afoul of the

constitutional prohibition against open-ended warrants, the court held that suppression was

not required under the good-faith exception to the Exclusionary Rule because the agents

followed the "express directions" of the judge and affixed the judge's name to it. Id. In

doing so, the court emphasized that the agents acted "at the insistence of the judge" in not

reading the actual warrant to the judge. Id.

In United States v. Medearis, No. CR 10-30057-RAL, 2011 U.S. Dist. LEXIS 4643

(D.S.D. Jan. 13, 2011), this Court applied the Leon exception in a similar tribal search

warrant case. In that case, a tribal officer sought and obtained a search warrant from a tribal

judge for a vehicle that had been towed to the defendant's residence after an accident. Upon

discovering that the windshield had been removed from the vehicle, the officer telephoned

the same tribal judge, who verbally authorized the search of the defendant's property for the

missing windshield. Police then found the windshield on the premises. After being indicted

for tampering with evidence, the defendant moved to suppress the windshield and other

physical evidence under Rule 41 of the Federal Rules of Criminal Procedure and the Warrant

Clause of the Fourth Amendment. This Court held that the search and seizure were

constitutional under the Leon good-faith exception because the officer's "non-compliance

with the procedural prerequisites for the issuance of a telephonic warrant was neither

intentional nor the result of bad faith," defendant "received the benefit of a tribal judge's

impartial evaluation before the search occurred," and "[t]he search was supported by

probable cause and conducted in good faith." Id. at *29. These same factors support

application of the good faith exception in this case.

Likewise, other courts have applied Leon in telephonic search warrant cases in which

various technical, non-fundamental errors were made. See e.g. United States v. Hessman,

369 F.3d 1016, 1019-23 (8th Cir. 2004); United States v. Hornbeck, 118 F.3d 615, 617-18

(8th Cir. 1997) (failure to timely file return and provide defendant with inventory of property

seized, in violation of tribal law, did not require suppression); United States v. Berry, 113

F.3d at 123-24; United States v. Freeman, 897 F.2d 346, 348-50 (8th Cir. 1990); United

States v. Chaar, 137 F.3d 359, 362-64 (6th Cir. 1998) (police officer's reliance on telephonic

warrant was in good faith and objectively reasonable even though the warrant did not comply

with Rule 41's recording and transcription requirements); United States v. Clyburn, 24 F.3d

613, 617 (4th Cir. 1994) (Fourth Amendment does not require that statements made in

support of probable cause be tape-recorded or otherwise placed on the record or made a part

of the search warrant affidavit); United States v. Richardson, 943 F.2d 547, 548, 550-51 (5th

Cir. 1991) (reversing the district court's decision to suppress where the agent had not signed

the affidavit and the magistrate judge, in a telephone conversation, did not require an oath or

affirmation of the facts in the affidavit); United States v. Rome, 809 F.2d 665, 668-71 (10th

Cir. 1987) (suppression of evidence obtained from a search warrant, issued in violation of

Rule 41, would not serve the "remedial objectives" of the Exclusionary Rule, as approved by

Leon).

Valandra argues that the Supreme Court's decision in Groh v. Ramirez, 540 U.S. 551

(2004), mandates suppression in this case. In Groh, the Supreme Court held that a search

warrant was "facially invalid" because it failed to list any of the items that were to be seized -

thereby failing to conform to the particularity requirement of the Fourth Amendment - and

"the warrant did not incorporate other documents by reference [describing the things to be

seized], nor did either the affidavit or the application [describing the things to be seized] . . .

accompany the warrant." Id. at 557-58. The Court noted in Groh that, because the officer

made the "glaring deficiency" of preparing a warrant containing no description of the things

to be seized, the officer could not argue that he reasonably relied on a magistrate judge's

assurance that the warrant contained an adequate description of the things to be seized. Id. at

-14-

564.

In contrast to the situation in Groh, the warrant in this case incorporated by reference

an accompanying affidavit and addendum, which appropriately listed in detail the things to be

seized. (Government's Ex. 10, at 1). The Eighth Circuit has held that such a warrant

satisfies the Fourth Amendment particularity requirement. See United States v. Gamboa, 439

F.3d 796, 807 (8th Cir. 2006) (quoting Rickert v. Sweeney, 813 F.2d 907, 909) (8th Cir.

1987) ("an affidavit may provide the necessary particularity for a warrant if it is either

incorporated into or attached to the warrant.")); United States v. Curry, 911 F.2d 72, 76-77

(8th Cir. 1990) (noting that a description in a supporting affidavit can supply the requisite

particularity if "a) the affidavit accompanies the warrant, and b) the warrant uses suitable

words of reference which incorporate the affidavit therein.").

Officer Brady was objectively reasonable in believing that the warrant - and its

incorporated reference to the addendum - authorized the search and seizure of the items

removed from Valandra's residence on September 10, 2010. Officer Brady's reliance on the

warrant, and Judge Emery's probable cause determination, was in good faith. Officer

Brady's knowledge of Valandra and Valandra's involvement with drugs was more than

sufficient to believe that probable cause existed to search Valandra's residence for illegal

drugs and paraphernalia related to the use and distribution of such items. Valandra received

the benefit of a tribal judge's impartial evaluation, albeit over the phone, before the search

-15-

occurred. The search was supported by probable cause and conducted in good faith. For these reasons, this Court overrules Valandra's objection and adopts the analysis of these issues set forth in the Report and Recommendation.

## B. Objection 3 - Whether the Search Warrant Identified Valandra's House with Adequate Particularity

Valandra's third objection to the Report and Recommendation also concerns whether the particularity requirement of the Fourth Amendment was satisfied by the warrant in this case. Valandra objected on the ground that the September 10, 2010, search warrant did not describe the place to be searched with sufficient particularity. The warrant in this case identified the premises to be searched as "[t]he Paul Valandra residence which is a single wide trailer that is white in color with gold trim located on Todd Street, in the County of Todd, within the exterior boundaries of the Rosebud Sioux Indian Reservation, Mission, South Dakota . . . " (Government's Ex. 10). Photographs demonstrated, and Officer Brady acknowledged in testimony, that there were two trailers - two doors from each other on the same side of Todd Street - matching the description of "white in color with gold trim." Officer Brady testified that he did not list an address of Valandra's trailer on the search warrant application because he observed no indication of an address on the trailer when initially driving past the house at night. (T. 51, 66). Photographs subsequently taken demonstrated "381 W. Todd" handwritten on a cardboard placard in the lower-right corner of a window on the trailer, along with a red mobile home licensing decal and a decal containing

-16-

the number "84." (Defendant's Exs. B, D; T. at 65-67).

Under the Fourth Amendment, "no warrants shall issue . . . [unless] particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. In order to satisfy the Fourth Amendment's particularity requirement, the Eighth Circuit has required that a warrant identify the premises to be searched "with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort," and that the search warrant not create a "reasonable probability that another premise might be mistakenly searched." See United States v. Thurman, 625 F.3d 1053, 1057 (8th Cir. Nov. 22, 2010), cert denied at 131 S. Ct. 1803 (Mar. 28, 2011). "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." Id. (internal quotation and citations omitted). In determining whether a warrant satisfies the particularity requirement, a court "base[s] its determination on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." United States v. Fiorito, 640 F.3d 338, 346 (8th Cir. May 23, 2011) (quoting Milliman v. Minnesota, 774 F.2d 247, 250 (8th Cir. 1985)); see also Andersen v. Maryland, 427 U.S. 463, 480 n.10 (1976) (rejecting the argument that a lengthy and specific list of the items to be seized constitutes a "general warrant" and noting that the whole picture of an alleged illegal scheme with respect to the lot to be searched must be considered). In the Eighth Circuit, the total circumstances surrounding the case include

-17-

"what the affiant knew but did not include in the application for the warrant." Thurman, 625 F.3d at 1056-57.

Under the totality of the circumstances in this case, the search warrant satisfied the particularity requirement with respect to the place to be searched. The warrant identified the premises to be searched - Valandra's home - with sufficient particularity as to enable Officer Brady to locate and identify the premises with reasonable effort, and the search warrant did not create any reasonable probability that Officer Brady and others mistakenly might have searched another dwelling. Significantly, the search was led by Officer Brady, who was the same officer who prepared the affidavit, addendum, and warrant. Officer Brady had firsthand knowledge of Valandra and Valandra's green 1971 Ford Galaxie from his August 23, 2010 traffic stop of Valandra. Less than three weeks later, during an interview of Cheyenne Guerue, Officer Brady was told that Valandra lived in "a trailer behind the Boys and Girls Club" and that there was "a horse trailer and a blue truck near the residence." (T. at 41-43). Shortly thereafter, Officer Brady traveled to Todd Street and saw across from the house a horse trailer, a blue truck, and the green 1971 Ford Galaxie in which Valandra previously was stopped by Officer Brady on August 23, 2010. (T. 46). Based on his firsthand observations, Officer Brady then drafted the search warrant describing Valandra's house and location, and Officer Brady proceeded to properly execute the warrant at the appropriate house. While executing the search warrant, Officer Brady took photographs corroborating his prior

-18-

description. (T. 49). Hence, no confusion existed concerning which trailer to search, Officer

Brady took the steps that reasonably could be expected of him, and the search warrant

satisfied the particularity requirement.

## C. Objection 2 - Whether Officer Brady's Search of Valandra's Car was an Invalid Pretext for a Criminal Investigation Search

Valandra objected to the Report and Recommendation on the ground that Officer

Brady did not properly follow the established BIA inventory search policy (Government's Ex.

4) when searching the vehicle after Valandra and Ramona Whiting had been arrested and

placed in different patrol cars. The search resulted in the discovery of an open beer container

and a small plastic bag with the corner torn off of it. According to Valandra, any inventory

search in this case was invalid and unreasonable under the Fourth Amendment. Valandra

argues that Officer Brady's description of the vehicle search as an "inventory" search was a

pretext for criminal investigation and a ruse to rummage through Valandra's personal

property.

Officer Brady admittedly did not comply with the BIA policy requirements for

inventory searches. He did not follow section 2-22-04 of the policy, which required the

officer to "complete a vehicle inventory tow-in report." (Ex. 4, at 1-2; T. at 18-19). Officer

Brady attributed his failure to complete such a report to the Rosebud Sioux Tribe police

department not having such a form, (T. at 19), and he noted that he customarily completes

inventory reports on "a notepad or piece of paper." (T. 21). As his explanation for not

completing such a report on a piece of paper or notepad in this case, Officer Brady testified

that the commencement of the inventory search was interrupted by his discovery of the cup of

beer in the center console.  (T. at 21-22).  After observing the cup of beer in plain view, see

United States v. Muhammad, 604 F.3d 1022 (8th Cir. 2010) ("officers may seize an object

without a warrant if they are lawfully in a position from which they view the object, the

incriminating character of the object is immediately apparent, and the officers have a lawful

right of access to the object") (citing Minnesota v. Dickerson, 508 U.S. 366 (1993)

(describing "plain view" doctrine)), Officer Brady proceeded with a search incident to arrest

for evidence of the offense of Valandra's arrest - driving under the influence of alcohol.  (T.

at 109, 111-12).

Under the circumstances, a valid basis existed under Arizona v. Gant, 129 S. Ct. 1710

(2009), for a search incident to arrest.  In assessing the reasonableness of a warrantless

search, every analysis "begins . . . with the basic rule that searches conducted outside the

judicial process, without prior approval by judge or magistrate are *per se* unreasonable under

the Fourth Amendment – subject only to a few specifically established and well-delineated

exceptions." Arizona v. Gant, 129 S.Ct. 1710, 1716 (2009).  The Supreme Court's holding in

Gant "confined the applicability of the search-incident-to-arrest exception to two situations."

United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009).  "Police may search a vehicle

incident to a recent occupant's arrest if the arrestee is within reaching distance of the

-20-

passenger compartment at the time of the search or it is reasonable to believe that the vehicle

contains evidence of the offense of arrest." Gant, 129 S.Ct. at 1723.

Here, Officer Brady had probable cause to arrest Valandra for the criminal offense of

driving under the influence of an alcoholic beverage. Officer Brady's observations, the odor

of alcohol emanating from Valandra's vehicle and person, and Valandra's performance on

the exercises and field sobriety tests administered to him constituted ample evidence to

justify the arrest. This evidence also gave Officer Brady a reasonable basis to believe that

additional evidence relevant to Valandra's intoxication - such as alcoholic beverage

containers - might be found in the vehicle. See United States v. Tinsley, 365 Fed. Appx. 709,

711 (8th Cir. 2010) (holding that warrantless search of defendant's vehicle incident to lawful

arrest for driving while impaired was reasonable because the officers' observations of

defendant's behavior coupled with the strong odor of alcohol provided the officers a

reasonable basis to believe that evidence relevant to offense of arrest - such as bottles

containing alcohol - might be found in vehicle); United States v. Harris, No. 09-00385-01,

2010 U.S. Dist. LEXIS 54264, at *18-19 (W.D. Mo. 2010) (same), report and

recommendation adopted at 2010 U.S. Dist. LEXIS 64449. Thus, under the second prong of

Gant, the warrantless search of Valandra's vehicle incident to his lawful arrest was

reasonable. Because Officer Brady had probable cause to arrest Valandra and to search

Valandra's vehicle incident to that arrest, suppression of the evidence that Officers Brady and

White Hat found in the vehicle - the cup of beer and the plastic bag - is not warranted under the circumstances. Valandra's objection is overruled.

## D. Objection 4 - Whether Officer Brady Lacked an Appropriate Basis to Stop Valandra's Vehicle

Valandra objected to Officer Brady's August 23, 2010 stop of Valandra's vehicle, which ultimately resulted in the search of the vehicle. Officer Brady reported that he stopped Valandra based on the brake lights not illuminating. Valandra argues that this basis was pretextual and that Officer Brady's own testimony establishes the lack of a legitimate basis for the stop.

Officer Brady testified that Title 32 of the South Dakota Codified Laws - pertaining to motor vehicles - had been assimilated into the Rosebud Sioux Tribe Law and Order Code. (T. at 77). Under SDCL § 32-17-8.1, motor vehicles "shall be equipped with two or more stop lamps" and "shall display a red light visible from a distance not less than three hundred feet to the rear in normal sunlight." SDCL § 32-17-8.1. Violation of Section 32-17-8.1 is a petty offense. Id.

Officer Brady estimated that he was 100 yards (300 feet) to 200 yards (600 feet) away from Valandra's vehicle when it stopped at the intersection of Highways 18 and 83. (T. at 6-7, 76, 78). Officer Brady observed Valandra's vehicle and noticed that its brake lights did not illuminate upon stopping. Valandra argues that because Officer Brady could have been more than 300 feet away when he observed Valandra's vehicle stop, there was no equipment

-22-

violation and thus, because the conduct observed preceding the stop was entirely lawful,

Officer Brady had no legitimate basis for stopping the vehicle.

"A traffic stop is legal under the Fourth Amendment if it is supported by probable

cause to believe that a violation of law has occurred." United States v. Little, No. 09-50099,

2010 U.S. Dist. LEXIS 34360, at *8 (D.S.D. Apr. 7, 2010) (citing Whren v. United States,

517 U.S. 806, 810 (1996)).  The Eighth Circuit has described the standard for a traffic stop as

follows:

> A traffic stop generally must be supported by at least a reasonable, articulable
> suspicion that criminal activity has occurred or is occurring, and a traffic violation -
> however minor - creates probable cause to stop the driver of a vehicle.

United States v. Martin 411 F.3d 998, 1000 (8th Cir. 2005) (internal citations and quotations

omitted) (citing United States v. Fuse, 391 F.3d 924, 927 (8th Cir. 2004)).  "An officer has

probable cause to conduct a traffic stop when he observes even a minor traffic violation.  This

is true even if a valid traffic stop is a pretext for other investigation." United States v. Sallis,

507 F.3d 646, 649 (8th Cir. 2007) (internal quotations omitted); see also Whren v. United

States, 517 U.S. at 811-12 (noting that there is no "principle that ulterior motives can

invalidate police conduct that is justifiable on the basis of probable cause to believe that a

violation of law has occurred."); City of Indianapolis v. Edmond, 531 U.S. 32, 45 (2000) ("In

Whren, we held that an individual officer's subjective intentions are irrelevant to the Fourth

Amendment validity of a traffic stop that is justified objectively by probable cause to believe

-23-

that a traffic violation has occurred."). The determinative question is not whether the

defendant actually violated the Motor Vehicle Code by operation of a vehicle without an

operable brake light, but "whether an objectively reasonable police officer could have formed

a reasonable suspicion that [the defendant] was committing a code violation." Martin, 411

F.3d at 1001. Even if an officer is mistaken about the existence of a violation, "the validity

of a stop depends on whether the officer's actions were objectively reasonable in the

circumstances." Id. (quoting United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005)). In

cases of mistake, "the question is simply whether the mistake, whether of law or fact, was an

objectively reasonable one." Id. (quoting United States v. Smart, 393 F.3d 767, 770 (8th Cir.

2005)). Whether the requisite reasonable suspicion existed to stop a vehicle "is not to be

made with the vision of hindsight, but instead, by looking to what the officer reasonably

knew at the time." United States v. Sanders, 196 F.3d 910, 913 (8th Cir. 1999). A court

"should not expect state highway patrolmen to interpret the traffic laws with the subtlety and

expertise of a criminal defense attorney." Martin, 411 F.3d at 1001 (quoting Sanders, 196

F.3d at 913).

　　　In this case, regardless of whether Valandra violated the brake light statute, Officer

Brady was justified in making the stop because his conduct was objectively reasonable. The

lower end of the range of Officer Brady's estimated distance from Valandra's vehicle when

observing it stop was 300 feet, which is within the distance of brake light visibility required

-24-

by the statute. Thus, Officer Brady might have observed Valandra violating the statute, and, even if Valandra was not in violation of the statute, Officer Brady reasonably could have believed that he had observed such a violation based on his inability to see an illuminated brake light from a relatively close distance. Either way, Officer Brady's stop was supported by a reasonable, articulable suspicion that a violation had occurred or was occurring, thereby creating probable cause to stop Valandra's vehicle. Valandra's objection is overruled.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion to Suppress Statements and Evidence (Doc. 23) is denied. It is further

ORDERED that Defendant's Objections to the Report and Recommendation (Doc. 40) are overruled. It is further

ORDERED that the Report and Recommendation (Doc. 37) is adopted.

Dated August 5, 2011.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

-25-